23475

Gunilla HOLLBUS, Plaintiff v. SEABREEZE LIMITED PARTNERSHIP, Lighthouse Realty, Inc., Henry Klint, Norman M. Lack, II, and Linda J. Schaeffer, Defendants.

(409 S.E. (2d) 387)

Supreme Court

*Jack D. Simrill,* Hilton Head Island, *for plaintiff.*

*Stephen P. Hughes,* Beaufort, *for defendants.*

Heard June 10, 1991.

Decided Sept. 9, 1991.

HARWELL, Justice:

Pursuant to Supreme Court Rule 46, the following questions have been certified to this Court by the United States District Court for the District of South Carolina:

1. Under South Carolina law, does Real Estate Commis-

sion Regulation 105-21, as amended, apply in a real estate sale, if the earnest money deposits are paid to the seller rather than to the seller's broker under an agency agreement by which the seller agreed to provide escrow services?

2. Under South Carolina law, can the question of compliance or noncompliance with the requirements of the Revised Statement of Policy of the South Carolina Securities Commissioner, dated September 6, 1985, regarding use of a buyer's deposit by a developer in sales in his subdivision, and the requirement to escrow buyer's deposit funds in Real Estate Commission Regulation 105-21, as amended, be considered along with the requirements of S.C. Code Ann. § 40-57-170, as amended, in determining whether the transaction is against public policy?

3. Under South Carolina law, if a developer, in sales in the developer's subdivision, enters into an agreement with his broker to provide escrow services in connection with the development and sale of the property, does the developer become the special agent of the broker for escrow purposes?

## FACTS

Plaintiff Gunilla Hollbus (purchaser) contracted with defendant subdivision developer Seabreeze Limited Partnership (seller) for the purchase of a lot and construction of a residence on the lot. The purchase price was $322,900 cash, payable $1,500 down, $63,080 within ten days, and the balance of $258,320 at closing. The pre-printed contract form provided that purchaser would pay the required deposits to seller, that purchaser's funds could be used by seller for project development costs, and that the deposited funds could be placed in an interest bearing account with interest accruing to seller.

Purchaser delivered the required deposit checks to defendant Lighthouse Realty, Inc. (broker), and broker delivered the checks to seller. Pursuant to the contract and to seller's instructions, the checks were made payable to seller. Seller deposited the checks into its own account and utilized the money for its own purposes.

After four months, seller had not begun construction on

purchaser's lot. Consequently, purchaser notified defendants of her intention to cancel the contract. When seller did not return her deposits, purchaser initiated this action against defendants and their agents alleging several causes of action, including conspiracy to violate 27 S.C. Code Ann. Regs. 105-21 (1976); conspiracy to convert purchaser's earnest money deposits; conversion of her funds; and violation of South Carolina's Unfair Trade Practices Act.

QUESTION I:

Under South Carolina law, does Real Estate Commission Regulation 105-21, as amended, apply in a real estate sale, if the earnest money deposits are paid to the seller rather than to the seller's broker under an agency agreement by which the seller agreed to provide escrow services?

The provisions of Real Estate Commission Regulation 105-21 impose various obligations upon a broker regarding the handling of funds when the broker receives funds as the agent for his principal. For example, the regulation requires that a broker deposit any funds he receives into an escrow account. However, in this case, the earnest money deposits were paid to seller, rather than to broker, because of an agency agreement entered into between seller and broker which stipulated that seller would provide all escrow services. Purchaser contends that the agency agreement demonstrates that seller and broker were collaborators, joint venturers, or principal and agent in the escrow arrangement, and that as a result, broker cannot avoid the provisions of Regulation 105-21.

The specific provisions of the contract to purchase the real estate, entered into between seller and purchaser, provided that purchaser would pay all deposits to seller. The contract did not contain a provision mandating that purchaser's funds be escrowed, and the contract specifically authorized seller to use the funds for development costs. In fact, although purchaser delivered the checks to broker, the checks were payable to seller, and the money was deposited and utilized by seller, rather than broker. Furthermore, there is no evidence of any collusion by broker to improperly dispose of purchaser's funds, no evidence of any payment or other benefit to broker from the funds, and no evidence that broker engaged

in any wrongful conduct. Since none of the earnest money deposits were paid to broker, broker did not have a duty to escrow any funds. Consequently, we conclude that Regulation 105-21 is not applicable under the facts of this case.

QUESTION II:
Under South Carolina law, can the question of compliance or noncompliance with the requirements of the Revised Statement of Policy of the South Carolina Securities Commissioner, dated September 6, 1985, regarding use of a buyer's deposit by a developer in sales in his subdivision, and the requirement to escrow buyer's deposit funds in Real Estate Commission Regulation 105-21, as amended, be considered along with the requirements of S.C. Code Ann. § 40-57-170, as amended, in determining whether the transaction is against public policy?

The Revised Statement of Policy of the South Carolina Securities Commission specifically provides that the purpose of the statement "is to provide guidelines for the determination of when an offering of condominiums of other units of real estate will be required to register under the [South Carolina Uniform Securities] Act." The statement mandates that when real estate transactions are security transactions, earnest money must be escrowed and may be used by the seller only if certain conditions are met. In this case, seller did not comply with these requirements. Purchaser contends that seller's noncompliance with the statement, when considered along with the requirements of Regulation 105-21 and S.C. Code Ann. § 40-57-170 (Supp. 1990),[1] demonstrates that the transaction contravenes public policy and is, therefore, null and void.

In the reply brief, purchaser states that she "does not contend that the Commissioner's Statement of Policy controlled the transaction as a security." Instead, purchaser contends that the statement demonstrates that the policy of this State is to protect buyers in this type of transaction. However, since there is no evidence whatsoever that the transaction was a security transaction, the fact that the statement was not com-

---

[1] Section 40-57-170 addresses the circumstances under which the Real Estate Commissioner can investigate a broker and suspend, revoke, or cancel his license.

plied with is irrelevant and cannot be utilized to demonstrate that the transaction was void as against public policy.

Further, as we noted above, Regulation 105-21 is inapplicable to the facts of this case because broker did not perform the function of handling the funds, seller did. Purchaser also contends that broker has violated various provisions of Section 40-57-170 by acting in bad faith and engaging in dishonest activity, by failing to return money belonging to another, and by failing to place the deposit money into an escrow account. However, there is no evidence that broker acted dishonestly or in bad faith. In addition, since the deposit money was not payable to broker, broker could not return the money or deposit it into an escrow account. Again, the provisions of Section 40-57-170 are simply inapplicable to the facts of this case and cannot be utilized to demonstrate that the transaction was void as against public policy.

QUESTION III:

Under South Carolina law, if a developer, in sales in the developer's subdivision, enters into an agreement with his broker to provide escrow services in connection with the development and sale of the property, does the developer become the special agent of the broker for escrow purposes?

The agency agreement, which governed the relationship between seller and broker, stipulated that seller would provide all escrow services. Purchaser contends that broker appointed seller as his special agent when broker agreed, in the agency agreement, to allow seller to perform escrow services. Thus, purchaser asserts that broker is liable for the seller's acts because seller was broker's special agent and because broker participated in the conversion of purchaser's funds. We disagree.

There is no evidence that broker appointed seller as his special agent for escrow purposes. Instead, it is clear that seller intentionally retained the authority to perform escrow services.[2] This is evidenced not only by the

---

[2] As owner of the real estate, it is clear that seller was entitled to limit the authority of broker. *Cf. Lowrance v. Swaffield*, 123 S.C. 331, 116 S.E. 278 (1923) (a real estate broker is bound to act in compliance with the instructions of his principal and in conformity to the authority conferred).

agency agreement, but also by the purchase contract, which specifically provided that purchaser would pay the required deposits to seller, and that seller could use purchaser's funds for project development costs. Thus, seller was not the special agent of broker; rather, broker was the agent of seller and was bound to act in compliance with the limited authority conferred. Finally, as we noted above, there is no evidence that broker collaborated with seller to convert purchaser's earnest money deposits. Based on the foregoing, we conclude that seller was not acting as the special agent of broker.

Certified questions answered.

GREGORY, C.J., and CHANDLER, FINNEY and TOAL, JJ., concur.